1  JOHN M. SORICH (CA Bar No. 125223)
   John.Sorich@piblaw.com
2  SHERI M. KANESAKA (CA Bar No. 240053)
   Sheri.Kanesaka@piblaw.com
3  PARKER IBRAHIM & BERG LLC
   695 Town Center Drive, 16th Floor
4  Costa Mesa, California 92626
   Tel:  (714) 361-9550
5  Fax: (714) 784-4190

6  Attorneys for Defendants
   JPMORGAN CHASE BANK, N.A.,
7  CALIFORNIA RECONVEYANCE COMPANY
   and U.S. BANK NATIONAL ASSOCIATION, as
8  Trustee, etc.

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12
   KATY SULLIVAN, also known as          CASE NO.: CV 09-2161 EMC
13 KATY MARIE SULLIVAN,
                                         Assigned: Hon. Edward M. Chen
14             Plaintiff.
                                         JOINT STATUS REPORT
15 v.                                    FOLLOWING OCTOBER 1, 2015
                                         HEARING ON ORDER TO SHOW
16                                       CAUSE RE SETTLEMENT AND
   WASHINGTON MUTUAL BANK, FA,           REQUEST FOR EXTENSION OF
17 JPMORGAN CHASE BANK, National         TIME TO FUND NEW LOAN
   Association, BANK OF AMERICA,         ORDER
18 national Association. CALIFORNIA
   RECONVEYANCE COMPANY; and             Date:    December 1, 2015
19 Does 1 through 50, inclusive,         Time:    N/A
                                         Place:   Ctrm 5
20             Defendants.               450 Golden Gate Ave.
                                         San Francisco, CA 94102
21

22

23 **TO THE HONORABLE EDWARD M. CHEN, UNITED STATES DISTRICT**

24 **COURT JUDGE:**

25         Following the October 1, 2015, continued hearing on the Order to Show Cause

26 dated July 17, 2015, as to why the terms of the settlement should not be enforced, the

27 parties submit this report regarding activities undertaken to obtain the new loan since

28 the October 1st hearing and the October 23rd joint status report.

{00504667.DOCX 5}

The parties continue to make progress towards generating the new loan pursuant to the settlement terms and conditions.  Specifically, on or about November 5th, Chase sent Ms. Sullivan a preliminary loan origination "packet" (required by law) which includes disclosures regarding privacy policies and rights, mortgage loan product information, estimated escrow amounts, and a draft uniform residential loan application with information provided by Ms. Sullivan.  On November 9th, Ms. Sullivan advised Mr. Sorich that she received the documents on November 6th and that there were some errors in the draft uniform residential loan application but she would provide specific information after reviewing the documents more thoroughly.  On November 9th, Mr. Sorich acknowledged receipt of Ms. Sullivan's November 9th correspondence and advised that in addition, the CC&R's require a master insurance policy for the two condominium units but the insurance company advised Chase that only a basic homeowner's policy was in place.  On November 12th, Ms. Sullivan advised Mr. Sorich that she was working on changing the policy to a master policy for the HOA.  On November 12th, Ms. Sullivan also advised Mr. Sorich of the specific errors on the application that needed to be revised or updated.  Chase is currently working on implementing and verifying these changes.  On November 20th, Ms. Sullivan advised that she obtained the HOA Master Policy to replace the homeowner's policy.

However, an unforeseen issue arose with respect to title of the property.  In conjunction with originating the new loan, Chase received a preliminary title report from the title company.  A true and correct copy of the 2015 preliminary title report is attached hereto and incorporated herein by reference as <u>Exhibit 1</u>.  The preliminary title report discloses a prior lien against the property.  This lien clouds title and may delay issuance of a new loan.  The lien relates to a $50,000 loan issued in 2005 to Ms. Sullivan and Stefan T. Welter.  A true and correct copy of the recorded deed of trust for the 2005 loan is attached hereto and incorporated herein by reference as <u>Exhibit 2</u>.  Chase was previously unaware of this encumbrance because the title policy for the

1    2006 loan does not reflect this encumbrance against title to the property.  A true and

2    correct copy of the title policy for the 2006 loan is attached hereto and incorporated

3    herein by reference as <u>Exhibit 3</u>.  Chase believes that the 2006 loan was intended to,

4    or did, pay off the $50,000 loan but the title company inadvertently failed to reconvey

5    the deed of trust.  Chase believes the beneficiary of the 2005 loan as identified in the

6    deed of trust, National City Bank, is now defunct and that PNC Bank is the successor-

7    in-interest.  Chase is working with the title company and may need to reach out to

8    PNC Bank to resolve this cloud on title.  On November 17th, Mr. Sorich advised Ms.

9    Sullivan of this issue, and provided responses to the questions and issues raised in Ms.

10   Sullivan's November 12th correspondence.  On November 19th, Ms. Sullivan sent Mr.

11   Sorich two documents from National City regarding an account ending in 4519.  The

12   April 19, 2006, document states that the payoff balance for the loan as of April 28,

13   2006, is $149,966.87.  The August 2, 2006, document states that the account was

14   closed and had a payoff amount of $0.00.  True and correct copies of the National City

15   documents provided by Ms. Sullivan are attached hereto and incorporated herein by

16   reference as <u>Exhibit 4</u>.  It is not entirely clear whether the account ending in 4519

17   relates to the existing lien on the property because the deed of trust states that the

18   maximum amount secured shall not exceed $50,000, and because the deed of trust

19   does not appear to reflect a loan number.  On November 20th, Ms. Sullivan advised

20   that she authorized the title company to determine whether the National City deeds of

21   trust were released.

22

23   ///

24   ///

25   ///

26   ///

27

28

{00504667.DOCX 5}

1     Chase and Ms. Sullivan have been cooperating in efforts to obtain and provide

2 the necessary information to generate the new loan and to clear title to the property.

3 In light of the parties' efforts and the title issues, the parties respectfully request an

4 extension of time of the Court's December 1st deadline to complete the origination and

5 closing of the new loan to January 31, 2016.

6

7 DATED:  November 24, 2015          Respectfully submitted,

8                                    PARKER IBRAHIM & BERG LLC

9                                    By:  /s/ Sheri M. Kanesaka

10                                        JOHN M. SORICH
                                         SHERI M. KANESAKA

11                                       Attorneys for Defendants

12

13

14 DATED:  November 24, 2015          By: /s/ Katy Sullivan
                                         KATY SULLIVAN also known as
15                                       KATY MARIE SULLIVAN

16

17

18 IT IS SO ORDERED.  A further CMC is set
   for 2/11/16 at 10:30 a.m.  An updated joint
19 CMC statement shall be filed by 2/4/16.
   Parties shall file a joint statement with this
20 Court if the loan is closed before the 2/11/16
   CMC.  Otherwise, parties must appear in person
21 on 2/11/16.

22 Edward M. Chen
   U.S. District Judge
23

24                    IT IS SO ORDERED
                      AS MODIFIED
25                    Judge Edward M. Chen

26

27

28

{00504667.DOCX 5}

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**
*Katy Sullivan v. Washington Mutual Bank, et al.*
USDC Northern Case No.: 3:09-cv-02161-EMC

I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to the within action.  My business address is **Parker Ibrahim & Berg LLC, 695 Town Center Drive, 16th Floor, Costa Mesa, California 92626**.

On November 24, 2015, I served the foregoing document described as **JOINT STATUS REPORT FOLLOWING OCTOBER 1, 2015 HEARING ON ORDER TO SHOW CAUSE RE SETTLEMENT AND REQUEST FOR EXTENSION OF TIME TO FUND NEW LOAN** on the interested parties in this action.

☒      by placing the original and/or a true copy thereof enclosed in (a) sealed envelope(s), addressed as follows:

**SEE ATTACHED SERVICE LIST**

☒      **BY REGULAR MAIL:** I deposited such envelope in the mail at 695 Town Center Drive, 16th Floor, Costa Mesa, California 92626.  The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODUCED ON PAPER PURCHASED AS RECYCLED.**

☐      **BY FACSIMILE MACHINE:** I Tele-Faxed a copy of the original document to the above facsimile numbers.

☐      **BY OVERNIGHT MAIL:** I deposited such documents at the Golden State Overnight or Federal Express Drop Box located at 695 Town Center Drive, 16th Floor, Costa Mesa, California 92626.  The envelope was deposited with delivery fees thereon fully prepaid.

☒      **BY CM/ECF ELECTRONIC DELIVERY:** In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov

☒      (Federal)  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on November 24, 2015, at Costa Mesa, California.

/s/  *Heather Kane*
_____
Heather Kane

{00504667.DOCX 5}

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
*Katy Sullivan v. Washington Mutual Bank, et al.*
USDC Northern Case No.: 3:09-cv-02161-EMC

Katy M. Sullivan                                    Tel:  (510) 551-6885
2628 Sutter St., B                                  katymsullivan@gmail.com
San Francisco, CA 94115
                                                    Pro Per

{00504667.DOCX 5}

# EXHIBIT 1

Order ID: 20255663

# PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein,* **National Title Insurance of New York, Inc.,** *hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said Policy or Policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the Policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder of Commitment should be requested.*

*The Policy(s) of title insurance to be issued hereunder will be policy(s) of* **National Title Insurance of New York, Inc..**

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Issuing Agent:
ServiceLink Title Company

National Title Insurance Of New York

By:

President

Attest:

Secretary

*Susan B. Falsetti*

Countersigned

# ServiceLink Title Company

East Escrow Division
400 Corporation Drive
ALIQUIPPA, PA, 15001
Phone :    (888) 414-6616
Fax :    (866) 874-3595

## PRELIMINARY REPORT

AMENDED DATE:          11/6/2015

ORDER NO:20255663
VERSION: 2

ESCROW OFFICER:     Chase East Client Service Team
TITLE OFFICER:         Chase Curative

TO:       JPMorgan Chase Bank, N.A., its Successors and/or Assigns and Secretary of Housing and Urban
           Development, their Successors and/or Assigns, as their respective interest may appear.
           1111 Polaris Parkway
           Columbus, OH, 43240

PROPERTY ADDRESS:
2628 Sutter Street Unit B
San Francisco, CA, 941152925

EFFECTIVE DATE :       10/19/2015 at 7:30 am

The form of Policy or Policies of title insurance contemplated by this report is:
ALTA ShortForm Residential Loan Policy (6-16-07)

1.  THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED
    BY THIS REPORT IS:

    A Condominium, as defined in Sections 783 & 1351(f) Et. Seq., of the California Civil Code, in fee

2.  TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

    | | | |
    |---|---|---|
    | **Grantee** | : | Katy M. Sullivan, an unmarried woman |
    | **Deed Date** | : | 4/24/2006 |
    | **Recorded** | : | 5/1/2006 |
    | **Book** | : | J130 |
    | **Page** | : | 0008 |
    | **Instr No.** | : | 2006-I1168729-00 |
    | | | Of Official Records |

3.  THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

    **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

Order No. 20255663

LEGAL DESCRIPTION

# Exhibit A

The following described property:

Situated in the City of San Francisco, County of San Francisco, State of California, and is described as follows:

Commencing at a point on the Northerly line of Sutter Street, distant thereon 93 feet 3 inches Easterly from the Easterly line of Lyon Street; running thence Easterly along said line of Sutter Street 22 feet; thence at a right angle Northerly 76 feet; thence at a right angle Westerly 5 feet 3 Inches; thence at a right angle Northerly 31 feet; thence at a right angle Westerly 16 feet 9 inches; thence at a right angle Southerly 107 feet to the point of commencement.

Being a portion of Western Addition Block No. 583

Assessor's Parcel No:       1054 -039

Order No. 20255663

AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:

1.      Property taxes which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the tax year(s) 2016.

2.      Property taxes, including any personal property taxes and any assessments collected with taxes, for the tax year(s) 2015, Tax ID 1054 039

| | | | | | |
|---|---|---|---|---|---|
| **Tax Effective Date** | : | 11/5/2015 | | | |
| **Installment 1** | : | $3,862.98 | **Status** | : | Open |
| **Install 1 Due** | : | 12/10/2015 | | | |
| **Penalty** | : | $0.00 | | | |
| **Installment 2** | : | $3,862.98 | **Status** | : | Open |
| **Install 2 Due** | : | 4/10/2016 | | | |
| **Penalty** | : | $0.00 | | | |

| | | |
|---|---|---|
| **Total** | : | $7,725.96 |
| **Land** | : | $428,728.00 |
| **Improvements** | : | $202,379.00 |
| **Exemption** | : | $7,000.00 |
| **Assessed Value** | : | $624,107.00 |

| | | |
|---|---|---|
| **Tax Agency** | : | SAN FRANCISCO COUNTY |
| **Address** | : | 1 DR. CARLTON B. GOODLETT PLACE RM140 SAN FRANCISCO, CA 94102 |
| **Phone** | : | (415) 554-4400 |
| **Fax** | : | (415) 554-4672 |

3.      The lien of supplemental taxes, if any, assessed pursuant to the provisions of Chapter 3.5 (Commencing with Section 75) of the Revenue and Taxation code of the State of California.

4.      (1) Covenants, conditions and restrictions, if any, appearing in the public records deleting there from any restrictions indicating any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin.
        (2) Easements or servitudes appearing in the public records
        (3) Leases, grants, exceptions or reservations of minerals or mineral rights appearing in the public records.

5.      A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | | |
|---|---|---|
| **Amount** | : | $50,000.00 |
| **Dated** | : | 3/1/2005 |
| **Trustor** | : | Stefan T. Welter and Katy M. Sullivan |
| **Trustee** | : | National City Bank |
| **Beneficiary** | : | National City Bank |
| **Recorded** | : | 3/8/2005 |
| **Instr No.** | : | 2005-H914928-00 |
| **Book** | : | I841 |
| **Page** | : | 0200 of Official Records |

This is an Open End Deed of Trust.

Maturity Date is: 3/1/2025

Order No. 20255663

6.    A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured
      thereby

| | | |
|---|---|---|
| **Amount** | : | $1,100,000.00 |
| **Dated** | : | 4/10/2006 |
| **Trustor** | : | Katy M. Sullivan |
| **Trustee** | : | California Reconveyance Company, a California  Corp. |
| **Beneficiary** | : | Washington Mutual Bank, FA |
| **Recorded** | : | 5/1/2006 |
| **Instr No.** | : | 2006-I168730-00 |
| **Book** | : | J130 |
| **Page** | : | 0009 |
| | | of Official Records |

This is a Closed End Deed of Trust.

Maturity Date is: 5/1/2046

Assignment of the above referenced security instrument is as follows:

| | | |
|---|---|---|
| **Assignor** | : | JPMorgan Chase Bank, National Association, successor in interest to Washington Mutual Bank, FA |
| **Assignee** | : | Bank of America, National Association as successor by merger to "LaSalle Bank NA as Trustee for WaMu Mortgage Pass-Through Certificates Series 2006-AR9 Trust |
| **Dated** | : | 3/26/2009 |
| **Recorded** | : | 3/27/2009 |
| **Instr No.** | : | 2009-I740181-00 |
| **Book** | : | J857 |
| **Page** | : | 0279 |
| | | of Official Records |

A Substitution of Trustee under said deed of trust which names as the substituted trustee, the following:

| | | |
|---|---|---|
| **Trustee** | : | JPMorgan Chase Bank NA |
| **Recorded** | : | 5/19/2015 |
| **Instr No.** | : | 2015-K062226-00 |
| | | of Official Records |

7.    A deed of trust to secure an indebtedness in the amount shown below, and any other obligations secured
      thereby

| | | |
|---|---|---|
| **Amount** | : | $134,400.00 |
| **Dated** | : | 2/13/2007 |
| **Trustor** | : | Katy M. Sullivan |
| **Trustee** | : | Group 9, Inc., a Pennsylvania Corporation |
| **Beneficiary** | : | Washington Mutual Bank, a Federal Association |
| **Recorded** | : | 4/16/2007 |
| **Instr No.** | : | 2007-I369326-00 |
| **Book** | : | J370 |
| **Page** | : | 0437 |
| | | of Official Records |

This is an Open End Deed of Trust.

Maturity Date is: 2/13/2037

A Substitution of Trustee under said deed of trust which names as the substituted trustee, the following:

| | | |
|---|---|---|
| **Trustee** | : | JPMorgan Chase Bank, N.A. |
| **Recorded** | : | 5/19/2015 |
| **Instr No.** | : | 2015-K062227-00 |
| | | of Official Records |

Order No. 20255663

A Notice of Default under the terms of said Deed of Trust

| | | |
|---|---|---|
| **Executed by** | : | JPMorgan Chase Bank National Association |
| **Recorded** | : | 3/27/2009 |
| **Instr No.** | : | 2009-I740182-00 |
| **Book** | : | J857 |
| **Page** | : | 0280 |
| | | of Official Records |

A Notice of Trustee's Sale under said Deed of Trust

| | | |
|---|---|---|
| **Executed by** | : | California Reconveyance Company |
| **Time of Sale** | : | 2:00 PM |
| **Place of Sale** | : | 7/27/2009 at the Van Ness Avenue Entrance to the City Hall, 400 Van Ness Ave, San Francisco CA |
| **Recorded** | : | 7/8/2009 |
| **Instr No.** | : | 2009-I791834-00 |
| **Book** | : | J929 |
| **Page** | : | 0261 |
| | | of Official Records |

Any matters, including homeowners assessments, related to the creation and establishment of a condominium appearing in the public records.

8.  Non-exclusive easements over and through the common area for ingress, egress, public utility enjoyment, support and repair of the common area and each unit, as provided in the above mentioned declaration and as disclosed by mesne deeds of record;

    **Affects**    :    Common Area

9.  Your application for title insurance was placed by reference to a street address only. Based on our records, we believe that the description in this report covers the parcel that you requested.

## NOTES:

1.  The policy to be issued may contain an arbitration clause. When the amount of Insurance is less than the amount, if any, set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.

2.  Amended Civil Code Section 2941, which becomes effective January 1, 2002 sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00.  The Reconveyance fee must be clearly set forth in the beneficiary's payoff demand statement.  In addition, an assignment or authorized release of that fee from the beneficiary to the trustee of record, must be included.  An example of the required language is as follows:  The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record the sum of $45.00, included herein as reconveyance fees, for the processing and recordation of the recordation of the reconveyance of the Deed of Trust securing the indebtedness covered  hereby and the Escrow Company or Title Company processing this payoff is authorized to deduct the reconveyance fee from this demand and forward said fee to the Trustee of record or the Successor Trustee under the Trust Deed to be paid off or in full.

3.  The ALTA Homeowner's Policy of Title Insurance (10/17/98) contains specific deductible amounts and specific liability maximums for Covered Risk numbers 14, 15, 16 and 18 of said policy that have been filed and approved by the various Departments of Insurance where the forms have been filed. Please consult with your escrow or title officer if you have questions regarding the policy.

4.  If property taxes are posted paid less than 45 days from the issuance of the policy contemplated by this report, the Company will hold the amount of the tax, plus delinquency and penalty until verification of payment is received. If verification has not been received within 45 days of the issuance of the policy contemplated, the Company will pay the taxes due. If the property taxes have been paid through an impound account and we are furnished written confirmation of same or you can provide a copy of the cancelled check, this requirement may be waived.

    If a monthly payment for any deed of trust to be paid in full is made less than 30 days from the issuance of the policy contemplated by this report, the Company will hold an amount equal to that payment until verification of payment is received from the lender. If verification has not been received within 30 days of the issuance of the policy contemplated, the funds held will be forwarded to the lender. If a canceled check or other form of proof of payment can be furnished, this requirement may be waived.

Order No. 20255663

5.      Upon said land there is located a Condominium known as

        **Address**      :   2628 Sutter Street Unit B
        **City**         :   San Francisco
        **State**        :   CA
        **Zip Code**     :   941152925
        **County**       :   San Francisco

6.      The following note is for informational purposes only:

The following deed(s) affecting said Land were recorded within twenty-four (24) months of the date of this report:

None found of record.

END OF NOTES

# EXHIBIT 2

This document was prepared by RORRI BLACKWELL, NATI
6750 Miller Road, Brecksville, OH 44141

Please return this document after recording to:
NCB, CLS BRECKSVILLE
LOCS, LOCATOR 7120
P.O. BOX 5570
CLEVELAND, OH 44101

San Francisco Assessor-Recorder
Mabel S. Teng, Assessor-Recorder
DOC- 2005-H914928-00
Acct 5-Financial Title
Tuesday, MAR 08, 2005 08:00:00
Ttl Pd    $27.00          Nbr-0002697945
REEL  I841  IMAGE 0200
oj1/KC/1-7

_____ State of California _____          Space Above This Line For Recording Data

# DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is **March 1, 2005**
and the parties, their addresses and tax identification numbers, if required, are as follows:
TRUSTOR:  **STEFAN T WELTER and KATY M SULLIVAN**
          **2628 SUTTER ST, SAN FRANCISCO, California, 94115**

☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
TRUSTEE: **NATIONAL CITY BANK**

LENDER: **NATIONAL CITY BANK**

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

The property is located in **San Francisco** _____ at _____
                                  (County)
**2628 - 2628 1/2 SUTTER ST** _____ **SAN FRANCISCO** _____ , California **94115**
          (Address)                        (City)                        (ZIP Code)
Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .....**50,000.00** ...... This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

**Maturity Date: 3/01/2025**

**CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)



ExPEÑE$ © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
(page 1 of 6)
-C465(CA)  (0403) 01          VMP Mortgage Solutions, Inc. (800)521-7291

914928

B.  All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D.  Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5.  **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

914928

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004

VMP®-C465(CA) (0402) 01

(page 4 of 6)

STW by MMS RAS
his atty. in fact

C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents       ☐ Other ...................................................................................

22. ☐ **ADDITIONAL TERMS.**

Experts © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP-C465(CA) (0403).01

(page 5 of 5)

914928

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded ................................................................, in book .............................. page ........................., records of ................................................................ County, (or filed for record with recorder's serial number ................................................................ County) California, executed by ................................................................ ................................................................ as trustor (or mortgagor) in which ................................................................, is named as beneficiary (or mortgagee) and ................................................................ as trustee be mailed to:

Name ................................................................................................................ at

Address ................................................................................................................

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

Signature on behalf of the requester named above:

Signature ................................................................

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) *Stefan T. Welter by Katy M Sullivan*   3/1/05 (Date)
STEFAN T WELTER by Katy M Sullivan

(Signature) *Katy M Sul*   3/1/05 (Date)
KATY M SULLIVAN

**ACKNOWLEDGMENT:**

STATE OF *California* COUNTY OF *San Francisco* } ss.

On this *1st* day of *March 2005* before me *Everett R. Castle III* a notary public, personally appeared *Katy M. Sullivan* personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Everett R. Castle*
Name (typed or printed) *Everett R. Castle III*
My commission expires: *Oct. 21, 2007*

EVERETT R. CASTLE III
Commission # 1446519
Notary Public - California
San Francisco County
My Comm. Expires Oct 21, 2007

(Seal)

---

### REQUEST FOR FULL RECONVEYANCE

**To Trustee:** The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of ................................................................ County, State of California, in book ......................... page ................... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: ................................................................................................................

---

Assessor's Identification Number

Express © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REOT-CA 3/10/2004

VMP-C455(CA) (0405).01

(page 6 of 6)

914928

45032875 -585 -HH1

Legal Description

All that certain real property situated in the City of San Francisco, County of San Francisco, State of California, described as follows:

COMMENCING at a point on the Northerly line of Sutter Street, distant thereon 93 feet 3 inches Easterly from the Easterly line of Lyon Street; running thence Easterly along said line of Sutter Street 22 feet; thence at a right angle Northerly 76 feet; thence at a right angle Westerly 5 feet 3 inches; thence at a right angle Northerly 31 feet; thence at a right angle Westerly 16 feet 9 inches; thence at a right angle Southerly 107 feet to the point of commencement.

BEING a portion of WESTERN ADDITION BLOCK NO. 583

# EXHIBIT 3

3062480623

 Chicago Title Insurance Company

---

POLICY NO.: CACTI7738-7738-2354-0035401821-CTIC-2006-06

## LOAN POLICY OF TITLE INSURANCE

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*

2. *Any defect in or lien or encumbrance on the title;*

3. *Unmarketability of the title;*

4. *Lack of a right of access to and from the land;*

5. *The invalidity or unenforceability of the lien of the insured mortgage upon the title;*

6. *The priority of any lien or encumbrance over the lien of the insured mortgage;*

7. *Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:*
   (a) *arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or*
   (b) *arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;*

8. *Any assessments for street improvements under construction or completed at Date of Policy which now have gained or hereafter may gain priority over the lien of the insured mortgage;*

9. *The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.*

*IN WITNESS WHEREOF, CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers.*

**Chicago Title Insurance Company**

BY *[signature]*
President

ATTEST *[signature]*
Secretary

*Morris Evans*
Countersigned

# SCHEDULE A

Policy No.:  CACTI7738-7738-2354-0035401821-CTIC-2006-06

| | |
|---|---|
| Amount of Insurance: | $ 1,100,000.00 |
| Premium: | $ 1,111.00 |

Date of Policy:  May 1, 2006 at 08:00 AM

1.      Name of Insured:

**Washington Mutual Bank, FA, a federal association, its sucessors and/or assigns**

2.      The estate or interest in the land which is encumbered by the insured mortgage is:

A Fee

3.      Title to the estate or interest in the land is vested in:

Katy M. Sullivan, an unmarried woman

4.      The insured mortgage and assignments thereof, if any, are described as follows:

**A deed of trust** to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | |
|---|---|
| Amount: | $1,100,000.00 |
| Dated: | April 10, 2006 |
| Trustor: | Katy M. Sullivan, an unmarried woman |
| Trustee: | California Reconveyance Company  a California corporation |
| Beneficiary: | Washington Mutual Bank, FA, a federal association |
| Loan No.: | 3062480623-079 |
| Recorded: | May 1, 2006, Instrument No. 2006-I168730-00, of Official Records |

5.      The land referred to in this policy is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**THIS POLICY VALID ONLY IF SCHEDULE B IS ATTACHED**

ALTA Loan Policy (10/17/92)
with ALTA Endorsement-Form 1 Coverage

Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Commencing at a point on the Northerly line of Sutter Street, distant thereon 93 feet 3 inches Easterly from the Easterly line of Lyon Street; running thence Easterly along said line of Sutter Street 22 feet; thence at a right angle Northerly 76 feet; thence at a right angle Westerly 5 feet 3 inches; thence at a right angle Northerly 31 feet; thence at a right angle Westerly 16 feet 9 inches; thence at a right angle Southerly 107 feet to the point of commencement.

Being a portion of Western Addition Block No. 583

APN: Lot: 18A, Block: 1054

ALTA Loan Policy (10/17/92)
with ALTA Endorsement-Form 1 Coverage

## SCHEDULE B

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

### PART I

1.  **Property taxes**, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2006-2007.

2.  **The lien of supplemental taxes**, if any, assessed pursuant to the provisions of Chapter 3.5 (Commencing with Section 75) of the Revenue and Taxation code of the State of California.

3.  **The herein described property** lies within the boundaries of a Mello-Roos Community Facilities District ("CFD"), as follows:

    | | |
    |---|---|
    | CFD No: | 90-1 |
    | For: | School Facility Repair and Maintenance |
    | Disclosed by: | Notice of Special Tax Lien recorded July 5, 1990 in Book F160, Page 1044 and by Supplemental Notice of Special Tax Lien recorded July 11, 1990, in Book F165, Page 1 et. seq., Official Records of the City and County of San Francisco |

    This property, along with all other parcels in the CFD, is liable for an annual special tax. This special tax is included with and payable with the general property taxes of the City and County of San Francisco. The tax may not be prepaid.

4.  **Easements** or servitudes appearing in the public records.

5.  **Covenants, conditions and restrictions,** if any, appearing in the public records, including provisions thereof for lien rights securing upkeep and maintenance obligations, but omitting any covenant or restriction so appearing based upon race, color, religion, sex, handicap, familial status or national origin as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

ALTA Loan Policy (10/17/92)
with ALTA Endorsement-Form 1 Coverage

Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06

**SCHEDULE B**

**PART II**

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

**NONE**

ALTA Loan Policy (10/17/92)
with ALTA Endorsement-Form 1 Coverage

© COPYRIGHT SAN FRANCISCO
CITY & COUNTY ASSESSOR 1998

1054

W   A BLK 583



BUSH



LYON

BAKER

SUTTER

ENDORSEMENT
Attached to Policy No. CACTI7738-7738-2354-0035401821-CT1C-2006-06
Issued by
Chicago Title Insurance Company

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.   The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for: (a) interest on interest; (b) changes in the rate of interest; or (c) the addition of unpaid interest to the principal balance of the loan.

2.   Loss of priority of the lien of the insured mortgage as security for the principal balance of the loan, including any unpaid interest which was added to principal in accordance with the provisions of the insured mortgage, interest on interest, or interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by (a) changes in the rate of interest; (b) interest on interest; or (c) increases in the unpaid principal balance of the loan resulting from the addition of unpaid interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth-in-lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:  May 1, 2006

Chicago Title Insurance
Company

*Morris Evans*
Countersigned

1 of 6

ALTA Form 6.2
Colorado Form 110.8
Washington Form W-111.8
CLTA Form 111.8 (1/17/04)

ENDORSEMENT
Attached to Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06
Issued by
Chicago Title Insurance Company


The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of the failure of (i) single family dwelling  known as 2628 Sutter Street, San Francisco , California , to be located on the land at Date of Policy, and (ii) the map attached to this policy to correctly show the location and dimensions of the land according to the public records.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


Dated:  May 1, 2006


Chicago Title Insurance
Company


*Morris Evans*
Countersigned

LTAA No. 5
Washington Form W-116
CLTA Form 116 (6/3/05)

ENDORSEMENT
Attached to Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06
Issued by
Chicago Title Insurance Company

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the Insured against loss or damage sustained by reason of lack of priority of the lien of the Insured mortgage over:

(a)     any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States district court for the district in which the land is located, except as set forth in Schedule B; or

(b)     any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:  May 1, 2006

Chicago Title Insurance Company



Countersigned

ALTA Form 8.1 (3/27/87)
Colorado Form 140.1
Washington Form W-110.9
CLTA Form 110.9 (1/17/04)

(8/98)

ENDORSEMENT
Attached to Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06
Issued By
Chicago Title Insurance Company

The Company hereby insures the owner of the indebtedness secured by the insured mortgage against loss or damage which the insured shall sustain by reason of:

1.      The existence of any of the following:

   (a)      Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be cut off, subordinated, or otherwise impaired;

   (b)      Present violations on the land of any enforceable covenants, conditions or restrictions;

   (c)      Except as shown in Schedule B, encroachments of buildings, structures or improvements located on the land onto adjoining lands, or any encroachments onto the land of buildings, structures or improvements located on adjoining lands.

2.      (a)      Any future violations on the land of any covenants, conditions or restrictions occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, provided such violations result in impairment or loss of the lien of the mortgage referred to in Schedule A, or result in impairment or loss of the title to the estate or interest referred to in Schedule A if the insured shall acquire such title in satisfaction of the indebtedness secured by the insured mortgage;

   (b)      Unmarketability of the title to the estate or interest referred to in Schedule A by reason of any violations on the land, occurring prior to acquisition of title to the estate or interest referred to in Schedule A by the insured, of any covenants, conditions or restrictions.

3.      Damage to existing improvements, including lawns, shrubbery or trees

   (a)      Which are located or encroach upon that portion of the land subject to any easement shown in Schedule B, which damage results from the exercise of the right to use or maintain such easement for the purposes for which the same was granted or reserved;

   (b)      Resulting from the exercise of any right to use the surface of the land for the extraction or development of the minerals excepted from the description of the land or shown as a reservation in Schedule B.

4.      Any final court order or judgment requiring removal from any land adjoining the land of any encroachment shown in Schedule B.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include the terms, covenants, conditions or restrictions contained in any lease.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions or substances except to the extent that a notice of a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy and is not excepted in Schedule B.

4 of 6

Washington Form W-100
LTAA No. 3R
CLTA Form 100 (6/3/05)

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:  May 1, 2006

Chicago Title Insurance Company

*Morris Evans*

Countersigned

Washington Form W-100
LTAA No. 3R
CLTA Form 100 (6/3/05)

ENDORSEMENT
Attached to Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06
Issued by
Chicago Title Insurance Company

The Company hereby insures the insured against loss or damage which the insured shall sustain by reason of the enforcement or attempted enforcement of any reverter, right of re-entry or right or power of termination of the estate or interest referred to in Schedule A upon breach of the covenants, conditions and restrictions referred to in Schedule B.

As used in this endorsement, the words "covenants, conditions or restrictions" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions or substances except to the extent that a notice of a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy and is not excepted in Schedule B.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Dated:  May 1, 2006

Chicago Title Insurance
Company

*Morris Evans*
Countersigned

5 of 6

Colorado Form 100.12
Washington Form W-100.12
CLTA Form 100.12 (6/3/05)

ENDORSEMENT
Attached to Policy No. CACTI7738-7738-2354-0035401821-CTIC-2006-06
Issued by
Chicago Title Insurance Company

The Company hereby insures the owner of the indebtedness secured by the mortgage referred to in paragraph 4 of Schedule A against loss which the insured shall sustain as a result of any exercise of the right of use or maintenance of the easement referred to in paragraph 4 of Schedule B over or through the land.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**Dated: May 1, 2006**

Chicago Title Insurance
Company

*Morris Evans*
Countersigned

6 of 6

Colorado Form 103.1
Washington Form W-103.1
CLTA Form 103.1 (6/3/05)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

    (a) created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy); or

    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

    (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or

    (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or

    (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:

        (a) to timely record the instrument of transfer; or

        (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

1. **DEFINITION OF TERMS**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

2. **CONTINUATION OF INSURANCE**

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is

the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3.   NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4.   DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE**

(a)   Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b)   The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c)   Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d)   In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5.   PROOF OF LOSS OR DAMAGE**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's

obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6.   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

**(a)   To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i)   to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii)   to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

**(b)   To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i)   to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)   to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.   DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)   The liability of the Company under this policy shall not exceed the least of:

(i)   the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

(ii)   the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii)   the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)   In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)   The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.   LIMITATION OF LIABILITY**

(a)   If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)   The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)   The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9.   REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a)   All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)   Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)   Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10.   LIABILITY NONCUMULATIVE**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on

the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11.  PAYMENT OF LOSS**

(a)  No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b)  When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12.  SUBROGATION   UPON   PAYMENT   OR SETTLEMENT**

(a)  **The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b)  **The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c)  **The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13.  ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the

land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14.  LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a)  This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)  Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c)  No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15.  SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16.  NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at:

FNF - Southwest Claims Center
17911 Von Karman Avenue, Suite 300
Irvine, CA  92614
Attn: Claims Administration

ALTA Loan Policy (10/17/92)
with ALTA Endorsement-Form 1 Coverage

# EXHIBIT 4

**National City.**

4/19/2006

**Consumer Loan Services**
P O Box 5570
Cleveland, Ohio 44101

3540182ٱ

CHICAGO TITLE

00000

Attn: MARY TAM

Phone :                Ext.
Fax:

Re: STEFAN T WELTER   00000   Account████████4519

Dear MARY TAM

This letter is in response to your request on 4/19/2006 .

A payoff balance was requested on the above Equity Reserve / Signature Line of Credit account number.█████4519   with National City Bank as of 4/28/2006 .

If no activity has occurred on this account meanwhile, the payoff balance is   149,966.87 which includes an early termination fee of        0.00   with a finance charge of $31.95   per day.

Please make checks payable to National City Bank and mail to:
Postal Mail:                          Overnight:
                                       (Federal Express/Airborne, etc.):

*+ 4 days to 5/2/06*
*= 150,094.67*

National City Bank                   National City Bank
Consumer Loan Services               Consumer Loan Services
Locator 01-7107                      Locator 01-7107
PO Box 5570                          6750 Miller Rd
Cleveland, OH  44101-0570            Brecksville, OH  44141-3239

It is not always necessary to close a line of credit when refinancing, call National City for details. If the account is to be closed and the lien released on the property (if property secured), the customer must sign the enclosed "Customer Authorization to Close Account" form and return it to us with your check to the above address.

If you have any questions or need further assistance please call us at 800-738-3888.

Sincerely,
Pamela J Wiles

(Rev. 01/03/05) MT0656CP

**National City**
Consumer Loan Services

National City Bank
**Consumer Loan Services**
P.O. Box 5570
Cleveland, OH 44101-0570

8/2/2006

RE:   Customer Name     STEFAN WELTER & KATY SULLIVAN
      Account Number     ████████4519

To Whom It May Concern;

Thank you for your recent inquiry concerning the above referenced account.

As you requested, I have listed the payoff information on your account.

Date payoff good through:   August 2, 2006
Prepayment penalty:         $        0
Payoff amount:              $        0- ACCOUNT CLOSED
Per diem:                   $        0

To calculate the current payoff, add the per diem for each day after the good through date listed, including the day the payoff is made to the payoff amount listed above.

The payoff may be mailed to:          Overnight mail:
National City                          National City
Consumer Loan Services                 Consumer Loan Services
Attention: Payoffs #01-7116            Loc.#01-7116
PO BOX 5570                            6750 Miller Rd.
Cleveland, Ohio 44101                  Brecksville, Ohio 44141

You are a valued customer of National City. If you have any additional questions or we may be of further service, please call us at ████████.

Sincerely,

Consumer Loan Services
National City Bank

The information contained in this facsimile is intended only for the personal and confidential use of the recipient named above. If this message has been received in error, any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this message in error, please notify us by telephone at the number listed above and destroy the materials attached to this cover sheet.

National City Consumer Loan Services is a division of National City Bank, a subsidiary of National City Corporation, and services the following National City Corporation subsidiaries:

National City Bank          Access Financial Corp.          National City Home Loan Services, Inc